**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES TAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1277** |
| **BURL CAIN** | **SECTION "K"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.  Factual Background**

The petitioner, James Taylor ("Taylor"), is an inmate currently incarcerated in the Louisiana State Penitentiary, Louisiana.[2] On April 27, 2000, Taylor and a co-defendant, Thea Williams ("Williams"), were indicted by an Orleans Parish Grand Jury for the second degree murder of Walter Ray ("Ray").[3]

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Suppl. Vol. 2 of 2, Indictment, 6/8/00; St. Rec. Suppl. Vol. 1 of 2, Grand Jury Minutes, 5/15/00.

The record reflects that Taylor and the victim, Ray, were employed together by the City of New Orleans Parks & Parkway Commission for two years.[4] Taylor, who was age 50 at the time of trial, was a driver and foreman of a crew. Ray, who was 36 when he died, was a laborer on the crew. The two were friends at one time, but Taylor eventually asked a supervisor to transfer Ray to another crew because he would not follow his instructions. From that point, Taylor believed that Ray carried a chip on his shoulder toward him and he tried to stay away from Ray.

On April 14, 2000, shortly after 7:00 a.m., Taylor and Ray were involved in an altercation at work while signing their timecards. The fight erupted when Taylor accused Ray of snatching a pen from him. A supervisor had given Taylor his pen to sign his timecard. Ray snatched the pen out of Taylor's hand, and when Taylor tried to retrieve it, Ray punched him in his jaw. Taylor then threw a cup of coffee on Ray, and in doing so slipped and fell. At that point Ray started beating on him, and had to be pulled off. A security guard took Ray somewhere and both men were eventually suspended for the day and sent home.

That afternoon, Taylor and his girlfriend, Williams, went back to his work to get his paycheck and then went to a Texaco gas station at 2946 Gentilly Blvd. to get gas. While there, they encountered Ray and his girlfriend, Patina Batiste ("Batiste"), who were also getting gas and cashing Ray's paycheck. Ray and Williams exchanged words outside, because Williams was staring at Batiste. Ray reportedly called Williams a "bitch" and went inside of the store to cash his check. While in line, Ray spoke with the man in front of him and apparently mentioned the earlier

---

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Taylor*, 850 So.2d 5, 9-15 (La. App. 4th Cir. 2003); St. Rec. Vol. 1 of 1, 4th Cir. Opinion, 2002-KA-2011, pp. 2-13, 6/11/03.

altercation with Taylor and also complained that a woman outside accused him of calling her a "bitch."

A short while later, Williams drove around and parked in front of the store. She went back into the store yelling obscenities at Ray, asking why he called her a bitch. Ray told her he did not, that he had no idea who she was, that he apologized, and to please leave him alone. Witnesses at the scene told police that Ray did not threaten the woman or do anything that might have been threatening. By all accounts, Williams continued to verbally attack Ray, putting her finger in his face and telling him he was a coward. Williams told Ray that it was over with, to forget about it, and to leave before anything happened.

At some point, Taylor got out of the car and walked into the store to get Williams. He had a gun which he carried on payday because he had once been robbed of his paycheck. When Williams saw Taylor with a gun in his hand, she implored him to stop. Witnesses told police that Ray said "it don't have to be this." However, Taylor claimed that Ray immediately grabbed him around the shoulders and he could not free himself. He testified that when Ray kept after him, he feared for his life and he shot Ray three times until he let go. Ray fell to the ground. Williams urged Taylor to "come on" and the two immediately left the store and drove away with Williams at the wheel. Witnesses at the scene gave the police the license plate number of the vehicle which led to their arrests.

On July 20, 2001, the Trial Court granted Williams's request to sever the trials.[5] Taylor was tried first, before a jury, on September 4 through 6, 2001, and was found guilty as charged of second

---

[5]St. Rec. Suppl. Vol. 2 of 2, Motion to Sever Defendants (Williams), 7/20/01; Trial Court Order, 7/20/01; *see also*, St. Rec. Suppl. Vol. 1 of 2, Hearing Minutes, 6/15/01 (oral request granted pending written motion).

degree murder.[6] Williams thereafter entered a plea of guilty on September 13, 2001, to the amended charge of accessory after the fact.[7] She was sentenced on October 12, 2001, to serve five years in prison, which was suspended.[8] She was placed on five years active probation and ordered to pay $3,000.00 in restitution to the victim's family.

At a hearing held February 15, 2002, the Trial Court denied Taylor's Motion for New Trial and sentenced him to serve life in prison, without benefit of parole, probation, or suspension of sentence.[9]

Taylor raised three grounds for relief on appeal to the Louisiana Fourth Circuit:[10] (1) the Trial Court erred in granting Williams's motion to sever and in allowing the State to try Taylor first; (2) the Trial Court erred (a) in denying the defense's challenge for cause regarding juror David Lee Olivier during voir dire, (b) in permitting the State to misstate the law on self-defense during voir dire, (c) in giving an incorrect jury instruction of self-defense, and (d) in preventing the defense from presenting evidence of the victim's bad or violent character; and (3) the Trial Court erred in denying the motion to suppress the 911 tape, in permitting the tape to be played for the jury, in refusing to give a limiting instruction, and in allowing the tape to be played a second time during the State's closing argument.

---

[6]St. Rec. Suppl. Vol. 1 of 2, Trial Minutes, 9/4/01; Trial Minutes, 9/5/01; Trial Minutes, 9/6/01; St. Rec. Vol. 1 of 1, Trial Transcript, 9/4-6/01.

[7]St. Rec. Suppl. Vol. 1 of 2, Plea Minutes (Williams), 9/13/01; *see* St. Rec. Suppl. Vol. 2 of 2, Indictment, 6/8/00 (amended 9/13/01).

[8]St. Rec. Suppl. Vol. 1 of 2, Sentencing Minutes (Williams), 10/12/01.

[9]St. Rec. Suppl. Vol. 1 of 2, Sentencing Minutes (Taylor), 2/15/02; St. Rec. Suppl. Vol. 2 of 2, Motion for New Trial (no date); Trial Court Order, 2/15/02.

[10]*State v. Taylor*, 850 So.2d at 5; St. Rec. Vol. 1 of 1, 4th Cir. Opinion, 2002-KA-2011, 6/11/03.

On June 11, 2003, the Louisiana Fourth Circuit determined that all but one facet of Taylor's claims were either without merit or were not preserved for appellate review by contemporaneous objection. The Court, however, determined that the Trial Court abused its discretion by overruling the defense's challenge for cause as to juror Oliver. With that, the Court reversed the conviction and remanded the matter to the Trial Court.

The State filed a writ application with the Louisiana Supreme Court seeking review of the challenge for cause issue.[11] The Court granted the writ on January 16, 2004.[12] In a reasoned opinion issued May 25, 2004, the Louisiana Supreme Court reversed the appellate court and reinstated Taylor's conviction and sentence.[13]

Taylor's conviction became final 90 days later, on August 23, 2004, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1)).

## II. Procedural History

Over four months later, on January 7, 2005, Taylor submitted an Application for Post-Conviction Relief, which was filed in the Trial Court on January 11, 2005, raising three grounds for relief:[14] (1) Louisiana's second degree murder statute is unconstitutional, because it mandates the same life sentence as is imposed for first degree murder; (2) the manslaughter statute is unconstitutionally vague, because it does not give enough guidance for a jury to be able to convict;

---

[11]St. Rec. Vol. 1 of 1, La. S. Ct. Writ Application, 03-K-1834, 6/27/03.

[12]*State v. Taylor*, 864 So.2d 612 (La. 2004); St. Rec. Vol. 1 of 1, La. S. Ct. Order, 2003-K-1834, 1/16/04.

[13]*State v. Taylor*, 875 So.2d 58 (La. 2004); St. Rec. Vol. 1of 1, La. S. Ct. Opinion, 2003-K-1834, 5/25/04.

[14]St. Rec. Suppl. Vol. 2 of 2, Application for Post-Conviction Relief, 1/11/05 (signed 1/7/05).

and (3) counsel was ineffective for failing to raise the disproportionality of the sentence and for failing to challenge the vagueness of the manslaughter statute. The Trial Court denied the application on March 10, 2005, finding each claim to be without merit and further finding that the challenge to the life sentence was not cognizable on post-conviction review pursuant to *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[15]

Taylor timely submitted a writ application to the Louisiana Fourth Circuit raising the same three claims.[16] The Court denied the application on May 4, 2005, finding no error in the Trial Court's ruling.[17] The Louisiana Supreme Court also denied without reasons Taylor's subsequent writ application addressing the same claims.[18]

## III. Federal Petition

On March 7, 2007, the Clerk of Court filed Taylor's petition for federal habeas corpus relief in which he raised four grounds for relief:[19] (1) The Eighth Amendment was violated where he was convicted of second degree murder and received the same sentence available for first degree murder; (2) the manslaughter statute is unconstitutional because it does not give enough guidance for a jury

---

[15]St. Rec. Suppl. Vol. 2 of 2, Trial Court Judgment, 3/10/05.

[16]St. Rec. Vol. 1 of 1, 4th Cir. Writ Application, 2005-K-0585, 4/14/05 (signed 4/8/05). Louisiana law provides a 30-day period to file for review of a trial court's ruling with the circuit court of appeal. La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922. Applying the appropriate mailbox rule, *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006), the date Taylor's signed his application, April 8, 2005, is the earliest date he could have submitted it to prison officials for mailing. That date was within the 30-day period.

[17]St. Rec. Vol. 1 of 1, 4th Cir. Order, 2005-K-0585, 5/4/05.

[18]*State ex rel. Taylor v. State*, 925 So.2d 1220 (La. 2006); St. Rec. Vol. 1 of 1, La. S. Ct. Order, 2005-KH-1827, 3/24/06; La. S. Ct. Writ Application, 05-KH-1827, 7/12/05 (signed 5/27/05, postmarked 6/2/05). La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A). Applying this rule and the applicable mailbox rule, *Causey*, Taylor's pro se petition was signed and postmarked within that time period.

[19]Rec. Doc. No. 1.

6

to be able to convict; (3) he was denied the opportunity to put on a defense and not allowed to have eyewitnesses testify; and (4) counsel was ineffective for failing to raise the disproportionate sentence or the unconstitutional manslaughter statute.

The State filed a response in opposition to Taylor's petition arguing that Taylor's third claim was not exhausted and the remaining claims were without merit.[20] After obtaining the state trial court record, the State filed a supplemental opposition in which it argued that Taylor's federal petition was untimely filed.[21] Taylor filed a reply to the supplemental opposition, alleging that his petition was timely filed within one year of completing his state post-conviction review.[22]

## IV. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 20, 2007.[24] The threshold questions in habeas review under the amended

---

[20]Rec. Doc. No. 6.

[21]Rec. Doc. No. 9.

[22]Rec. Doc. No. 10.

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Taylor's petition on March 7, 2007, when the filing fee was paid. Taylor dated his signature on the petition on February 20, 2007. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Taylor's petition was not timely filed and that all of his claims are not exhausted and one claim may be procedurally barred. The Court need not address the exhaustion and procedural bar defenses, because the limitations defense is dispositive of Taylor's petition for the reasons set forth below.

V.      **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[25] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Taylor's conviction became final on August 23, 2004, which was 90 days after the Louisiana Supreme Court denied his post-appeal writ application.

---

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Under the plain language of § 2244, Taylor had until August 23, 2005, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Taylor's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d. Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"), *aff'd* 488 F.3d 187 (3d. Cir. 2007). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Taylor's AEDPA filing period began to run on August 24, 2005, the day after his conviction was final. The filing period ran for 136 days, until January 7, 2005, when he submitted his application for post-conviction relief to the Trial Court. The application remained pending until March 24, 2006, which was the day the Louisiana Supreme Court denied his post-conviction writ application.

The AEDPA filing period began to run again on March 25, 2006, and did so for another 229 days, until it expired on November 8, 2006. Taylor had no other properly filed state post-conviction or other collateral review pending during that time period.

In his traverse, Taylor urges the Court to find his petition timely, because it was filed within one year of the completion of his state court post-conviction remedies. Taylor argues that he had two years to seek state post-conviction relief and then had one year from completion of that to file in federal court. This is not a correct statement of the law.

By its plain language, § 2244(d)(2) does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. *Flanagan*, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute which takes into account properly filed relevant state post-conviction pleadings. *Duncan*, 533 U.S. at 175-178. Any disparity between the state and federal time limits does not violate the constitution nor does it provide a basis for habeas corpus relief. *See generally Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Ellis v. Martin*, No. 98-6450, 1999 WL 1101241, at *3 (10th Cir. Dec. 6, 1999). Moreover, the AEDPA provides for a resolution of any conflict between state and federal post-conviction rights through its tolling provisions. *See* 28 U.S.C. §2244(d)(2). Taylor is not entitled to any further statutory tolling.

To the extent Taylor may be seeking equitable tolling for his delay, he has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. The post-AEDPA jurisprudence provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). However, a petitioner's ignorance of the law or mistake does not warrant equitable tolling. *See Cousin*, 310 F.3d at 849; *U.S. v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000); *see also Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000);

*accord Egerton v. Cockrell*, 334 F.3d 433 (5th 2003). Thus, Taylor's incorrect assumption that he had one-year from completion of his state post-conviction efforts to file in federal court does not warrant equitable tolling.

Taylor's federal petition is deemed filed on February 20, 2007, which was over three months after the AEDPA filing period expired on November 8, 2006. Taylor's federal petition must be dismissed as untimely.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that James Taylor's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 30th day of April, 2009.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**